# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHILLIP D. HOLBROOK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-cv-755-TLW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Phillip D. Holbrook, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), requests judicial review of the decision of the Commissioner of the Social Security Administration denying his applications for disability benefits under Titles II and XVI of the Social Security Act ("Act"). In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before the undersigned United States Magistrate Judge, and any appeal of this decision will be directly to the Tenth Circuit Court of Appeals. (Dkt. # 8).

Plaintiff protectively filed a Title II application for disability insurance benefits and filed a Title XVI application for SSI on January 18, 2007. Plaintiff alleged disability beginning September 5, 2004. Both claims were initially and upon reconsideration, denied. [R. 9]. The ALJ conducted a hearing on January 26, 2009. [R. 21]. Following an entry by the ALJ denying benefits, the Appeals Council denied plaintiff's request for review on October 6, 2010. [R. 1]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On November 29, 2010, plaintiff filed the subject action with this Court. (Dkt. # 2).

Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined that plaintiff was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

## Background

Plaintiff was born December 7, 1961 and was 47 years old on the date of the hearing before the ALJ. [R. 22, 243]. Plaintiff finished the eleventh grade and did not obtain a GED. [R. 22]. He was married on October 8, 1983 to Krista Holbrook who passed away in 1986. [R. 90]. He has two children over the age of 18. Id. Currently, plaintiff lives with his mother, who is disabled herself. [R. 113, 120, 135, 163, 170]. He admits to smoking 1-2 packs of cigarettes per day for 15-20 years. [R. 208, 211].

Beginning in 1994, plaintiff was employed by Gerard Chimney Company [R. 97-99] and carried out manual labor activities which included "demolition, repair and cleaning, and refurbishing of industrial smoke stacks." [R. 206]. Plaintiff sustained "repetitive cumulative trauma" to his lungs through exposure to soot, chemical debris, coal byproducts, and bird droppings. Id. In 2004, following a smoke stack cleaning operation in Iowa, plaintiff presented with symptoms of nausea, vomiting, fever, and shortness of breath. [R. 174, 177, 206]. X-rays revealed pulmonary nodules. [R. 206]. Plaintiff's main diagnoses are pulmonary histoplasmosis and hypertension. [R. 191].

## Decision of the Administrative Law Judge

The plaintiff had a hearing before an ALJ on January 26, 2009. [R. 19]. The ALJ found that he had not engaged in gainful employment since September 5, 2004. [R. 11]. He determined plaintiff's severe impairments to be status post pulmonary histoplasmosis, hypertension, and left wrist tendonitis. Id. However, not one or a combination of impairments

met or medically equaled one of the listed impairments. The ALJ placed specific emphasis on sections 1.02 (Major dysfunction of a joint(s) (due to any cause)), 3.00 (Respiratory System), and 4.00 (Cardiovascular System) in making this assessment. [R.11-12]. The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work, except with some residual shortness of breath with weakness in his left wrist and hypertension. [R. 12]. This precluded the plaintiff from performing any past relevant work. [R. 16].

The ALJ concluded plaintiff was not disabled by relying on 20 C.F.R. pt. 404, Subpt. P, App. 2, rule 202.18 for light work. [R. 17]. The ALJ relied solely on the grids, because there were no nonexertional limitations present. This finding was made at the fifth step in the five step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988) (discussing the five steps in detail).[1] Based on plaintiff's age, education, work experience, RFC, and the Medical-Vocational Guidelines ("grids"), the ALJ determined plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy. [R. 17]. The ALJ also noted that transferability of job skills was not material when using this specific grid because a finding of "not disabled" would result regardless. [R. 16].

Plaintiff identified two specific errors on appeal. First, the plaintiff argues the ALJ failed at step 5 of the sequential evaluation process by "mistakenly" applying the grids and thus creating an internally inconsistent decision. Second, plaintiff argues the ALJ failed to perform a proper credibility determination.

---

[1] The five-step sequence provides that the plaintiff (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents them from engaging in their past employment, and (5) has an impairment which prevents them from engaging in any other work, considering their age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) (citing Williams v. Bowen, 844 F.2d at 750-752).

**Review**

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams, 844 F.2d at 750. "If a determination can be made at any of the steps that a Claimant is or is not disabled, evaluation under a subsequent step is not necessary." Id. A plaintiff is disabled under the Act only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. See 42 U.S.C. § 423(d)(2)(A).

The role of this Court in reviewing a decision by the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion,

if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

### Discussion

Plaintiff contends the ALJ failed at Step 5 of the sequential evaluation process by a mistaken application of the grids. (Dkt. # 14 at 2). The ALJ may not rely conclusively on the medical-vocational grids in a Social Security disability case unless he or she finds that plaintiff has no significant nonexertional impairment, that plaintiff can do the full range of work at some RFC level on a daily basis, and that plaintiff can perform most of the jobs at that RFC level; each of these findings must be supported by substantial evidence. Social Security Administration Regulations, Part 404, Subpart P, App. 2, § 200.00 et seq., 42 U.S.C.A.App. See Thompson v. Sullivan, 987 F.2d 1482 (10th Cir. 1993).

The ALJ complied with the regulatory requirements in assessing plaintiff's RFC. In finding that plaintiff has the RFC to perform light exertional work, the ALJ determined that he could frequently lift and/or carry up to 10 pounds, occasionally lift and/or carry 20 pounds, stand and/or walk at least 6 hours in an 8-hour workday, and sit for at least 6 hours in an 8-hour workday. [R. 12]. The only restriction was one related to heavy lifting. In determining the RFC, the ALJ determined that plaintiff's status post pulmonary histoplasmosis, hypertension, and left wrist tendonitis were severe impairments, but not so severe as to rise to the level of one specified in the Listing of Impairments. [R. 11]. The ALJ applied listings 1.02 (Major dysfunction of a joint(s) (due to any cause)), 3.00 (Respiratory System), and 4.00 (Cardiovascular System) to evaluate the severe impairments. [R. 11-12].

The ALJ reviewed the objective medical evidence; the records and comments of plaintiff's examining physicians, treating specialist, and worker's compensation outpatient

evaluation; and his hospital records. The ALJ rounded out his review by considering the opinions reached by two qualified state agency physicians. Though the ALJ concluded that plaintiff's current RFC precludes him from returning to his past relevant work, he also concluded that plaintiff was capable of performing work at a light exertional level. [R. 16].

After an ALJ determines a plaintiff's RFC, the grids are used to determine whether, considering the plaintiff's age, education, and experience, the claimant is disabled. 20 C.F.R., Pt. 404, Subpt. P., App. 2 (1988). Yet, "where nonexertional impairments are also present, the grids alone cannot be used to determine the claimant's ability to perform alternative work." Trimiar v. Sullivan, 966 F.2d 1326, 1333 (10th Cir. 1992) (citations omitted). "In such a case, vocational expert testimony is required to determine 'whether jobs exist for someone with the claimant's precise disabilities.'" Id. Courts will overturn "determinations of 'not-disabled' where the ALJ conclusively applied the grids without sufficiently considering the plaintiff's nonexertional impairments." Channel v. Heckler, 747 F.2d 577, 581 (10th Cir. 1984). However, "[t]he presence of nonexertional impairments precludes reliance on the grids *only to the extent* that such impairments limit the range of jobs available to the claimant." (Ray v. Bowen, 865 F.2d 222, 226 (10th Cir. 1989) (emphasis added)).

Nonexertional limitations include those "mental, sensory, postural, manipulative, or environmental (e.g., inability to tolerate dust or fumes) limitations" that affect a plaintiff's ability to work. Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 579 (9th Cir. 1988) (Pregerson, J., concurring). The ALJ may not disregard subjective evidence of a nonexertional impairment where objective evidence of a medically determinable cause exists (Hammock v. Bowen, No. 87-3089, slip op. 1141, 1148 (9th Cir. Feb. 9, 1989)), because the effects of a

6

nonexertional impairment are dependent on the circumstances of each individual case. Channel at 580.

In this case, the plaintiff complains of weakness in his left wrist. The ALJ found plaintiff has a severe impairment of left wrist tendonitis. [R. 11]. Plaintiff testified that he cannot "grip anything very well with [his] left hand" and after repetitive activity, it would "cramp up." [R. 23-24]. Plaintiff reported problems with his left wrist in 2004 to the Social Security Administration. [R. 118, 129, 140, 164, 166, 168]. Yet, this ailment was not noted in the medical records until July 9, 2007 during Dr. Angelo Dalessandro's physical consultative examination. Dr. Dalessandro noted plaintiff complained of pain in the left wrist, cramping, and occasional pain in the left forearm but "rule[d] out left wrist tendonitis." [R. 212-13]. Additionally, the ALJ noted that "DDS physicians Woodcock, M.D., and Marks-Snelling, D.O., also concluded the [plaintiff]'s physical impairments were not 'severe' within the meaning of the applicable regulations." [R. 15]. The objective evidence only shows that plaintiff has a weaker grip in his left hand. Id.

The left-wrist weakness, however, is not a nonexertional limitation, because nonexertional limitations do not directly affect a plaintiff's strength. 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(d), (e); Desrosiers, 846 F.2d at 579 (Pregerson, J. concurring). Additionally, the regulations explain that some nonexertional limitations will have a negligible effect at a particular functional level while others will significantly narrow the opportunity to have a meaningful employment opportunity. 43. Fed. Reg. 55,349, 55,358 (1978). For example, "loss of fine dexterity would narrow the range of sedentary work much more than it would for light, medium or heavy work." Id. at 55,358–59. Dr. Dalessandro conducted a series of tests to determine plaintiff's range of motion and ability to manipulate his left hand. Upon completion

of these tests, Dr. Dalessandro noted that plaintiff had normal range of motion, could oppose the thumb to fingertip, manipulate small objects, and effectively grasp tools such as a hammer. [R. 15]. Additionally, plaintiff testified that he is right-handed. [R. 24].

There is substantial evidence to support the ALJ's determination that the nonexertional limitation has little or no effect on the occupational base of unskilled, light work.[2] Based on an examination of the full record, the ALJ concluded plaintiff could perform light work in which "he should not be required to do heavy lifting." [R. 12]. This is substantially all of the strength demands required under the RFC of light work. The reliance on the grids, therefore, was proper because of the absence of nonexertional limitations. See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir.1993) (holding, in relevant part, that "an ALJ may not rely conclusively on the grids unless he finds ... that the plaintiff has no significant nonexertional impairment").

Plaintiff also contends that Vocational Expert ("VE") testimony was required to determine "whether jobs exist for someone with the claimant's precise disabilities." (Dkt. # 14 at 4) (citing Ash v. Sullivan, 748 F. Supp. 804, 809 (D.Kan. 1990)). The "use of a vocational expert is required only where plaintiff's nonexertional impairments cause a limitation on the range of work available in a particular occupational base and where no other evidence (either in the record or in occupational resources upon which the Commissioner may rely) establishes that a significant number of jobs of which plaintiff is capable are available." Denison v. Astrue, 2011 WL 3236071 (D.Kan. 2011). The ALJ determined plaintiff did not have any significant

---

[2] Though the ALJ included medium jobs in his assessment of occupations identified in the national economy [R. 17], this is a harmless error because the substance of the ALJ's determination of "not disabled" was based on a determination of light work as evidenced by the selection of grid 202.18. Id. The ALJ needed only to rely on evidence that plaintiff could perform one or more occupations existing in significant numbers. Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995).

nonexertional limitations that would impact his ability to perform light work. An RFC of "light work" means there are "1,600 separate sedentary and light unskilled occupations [that] can be identified." 20 C.F.R. pt. 404, Subpt. P, App. 2, § 202.00(a). Where the grids establish that a significant number of jobs exist in the economy, the Commissioner need not introduce evidence of specific available jobs. Heckler v. Campbell, 461 U.S. 458, 468–70 (1983).

Next, plaintiff contends the ALJ "failed to properly consider all of the impairments documented in the record." (Dkt. # 14 at 4). This includes the inability to complete tasks, forgetfulness, dizziness, fatigue, coughing episodes, and a hearing problem. Id. The ALJ did consider each of these complaints, as supported by evidence in the record. Based on the information available to the ALJ, there was no objective evidence in the medical record to support inability to complete tasks or forgetfulness.

There was not sufficient evidence to show an impairment of dizziness. Initially, at the time of plaintiff's hospital admission in 2004, the attending physician noted that plaintiff was "nonfocal." Yet, a few months later in 2005 and after receiving treatment, the Physical Residual Functional Capacity Assessment did not include any postural or exertional limitations. [R. 300]. Additionally, in Dr. Delassandro's 2007 consultative examination, he notes plaintiff "denie[d] vertiginous episodes," can "heel-and-toe walk," and has "normal gait to speed, stability, and safety." [R. 212-213]. Furthermore, the July 2007 RFC Assessment by Dr. Woodcock noted no problems with plaintiff's walking or stability. [R. 226-227]. Based on the record, the ALJ was correct in not considering dizziness.

The hearing problem alleged is referenced in the medical record one time, during the 2007 consultative examination by Dr. Delassandro. [R. 211]. In fact, Dr. Delassadro merely noted that "tinnitus is present" but did not even identify which ear. In his testimony before the

9

ALJ, plaintiff stated he has a "constant ringing…like a whistle" in his left ear. [R. 28]. This statement is not supported by any prior medical examination. There is also no indication plaintiff sought treatment for this ailment and neither RFC assessment (2005 and 2007) indicate any hearing limitations. [R. 229, 302]. The examinations by the treating physician following plaintiff's initial 2004 hospital stay do not reveal any reported or suspected problems with the ear. [R. 182, 191, 193, 197]. Thus, the ALJ's determination that there was "little to no evidence" to support the left ear problem is supported by substantial evidence. [R. 11].

Plaintiff was not diagnosed with "chronic fatigue" and "[a]t this point there is no 'dipstick' laboratory test [available] for [a diagnosis of] chronic fatigue syndrome." Wilson v. Astrue, 302 F.3d 1136, 1143 (10th Cir. 2010) (citing Sisco v. U.S. Dep't of Health & Human Servs., 10 F.3d 739, 744 (10th Cir.1993)). The 2007 consultative examination is also the only reference in the medical record to "chronic fatigue." [R. 212]. The other mentions of fatigue arise from the plaintiff's own testimony and in the plaintiff's own Function Reports. [R 27-28, 115, 140, 165]. Though plaintiff was not diagnosed with "chronic fatigue" by any physician, the ALJ did consider his complaints of fatigue, shortness of breath, and exertional limitations when concluding plaintiff could work at a light exertional level with mild exertional limitations (avoiding heavy lifting). [R. 13-16]. Thus, substantial evidence supports the ALJ's finding of no fatigue limitations.

Finally, plaintiff claims that the ALJ did not consider his episodes of coughing. (Dkt. # 14 at 4). The ALJ listed histoplasmosis as a severe impairment. Coughing is a symptom of histoplasmosis. [R. 171]. The ALJ also noted that the plaintiff was "doing well" when under treatment for histoplasmosis with only an intermittent cough and no shortness of breath. [R. 14]. Moreover, the ALJ noted plaintiff's failure to continue medical treatment for his post status

pulmonary histoplasmosis [R. 16], as well as plaintiff's decision to continue smoking 1-2 packs of cigarettes per day. [R. 15]. The ALJ did adequately consider the episodic coughing and concluded that other factors could be reasonably expected to cause the symptoms alleged by the plaintiff. [R. 14]. There is sufficient evidence in the record to support the conclusion that the ALJ properly weighed all evidence and conditions presented by plaintiff in making his determination.

Plaintiff's second specific error raised on appeal argues the ALJ failed to perform a proper credibility determination. The ALJ determined that plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not credible. Id. An ALJ's credibility findings warrant particular deference because he is uniquely able to observe the demeanor and gauge the physical abilities of the plaintiff in a direct and unmediated fashion. White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002). Credibility determinations are peculiarly within the province of the finder of fact, and [this Court] will not upset such determinations when supported by substantial evidence." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir.2002) (quotation omitted). This Court reviews the ALJ's factual findings underlying its credibility determination to ensure that it is "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) (internal quotation omitted).

Plaintiff argues the ALJ improperly used "meaningless boilerplate" language to make his credibility determination. (Dkt. # 14 at 5) (relying on a Seventh Circuit opinion in Parker v. Astrue, 597 F.3d 920). He goes further to contend that such "boilerplate language" is disfavored. Id. (citing Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004)). This Court is not bound by the Seventh Circuit. The language used by the ALJ in this case is also not identical to the

"boilerplate" language disfavored by the Seventh Circuit, nor to the "boilerplate language" deemed insufficient by the Tenth Circuit. Furthermore, this Court has found this language satisfactory in the past when supported by evidence. See Babb v. Astrue, 2012 WL 405150 (N.D. Okla. 2012). The ALJ accurately set forth the relevant factors when assessing the credibility of the plaintiff's statements. [R. 13]. He then referred to specific evidence relied on when making the credibility determination.

The ALJ must cite specific evidence relevant to the factors used in evaluating a claimant's subjective complaints and explain why he concludes those complaints are not credible. See id. See also SSR 96-7p, 1996 WL 374186, at *4 (1996) (stating that credibility determinations cannot be based on "intangible or intuitive" reasons, but "must be grounded in the evidence and articulated in the determination or decision"). This process, however, "does not require a formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). 20 C.F.R. §§ 404.1529(c), 416.929(c) provides a framework in which to consider a claimant's subjective complaints.[3]

The ALJ cited specific reasons for discounting the persistence of some of the alleged persistence symptoms. First, plaintiff continues to smoke 1-2 packs of cigarettes a day [R. 15] and has for the last 15-20 years. [R. 208, 211]. Second, plaintiff discontinued the medication prescribed to treat his hypertension. [R. 15]. Third, plaintiff has weakness in his left hand, yet he is right hand dominant. [R. 13]. Fourth, the ALJ noted absence of current medical treatment

---

[3] The factors to consider in assessing a claimant's credibility are: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. Soc. Sec. Rul. 96–7p at 3, 1996 WL 374186 (1996).

for his post status pulmonary histoplasmosis. [R. 16]. Finally, the ALJ cited inconsistencies between plaintiff's testimony and the evidence of record, the medical findings of the physicians, and the medical testimony with regard to alleged limitations. [R. 16]. For these reasons, the ALJ did not find the alleged limitations persuasive. Based on the foregoing, the Court finds the ALJ linked his credibility findings to specific and substantial evidence.

Plaintiff argues the Court must apply Frey because the ALJ did not demonstrate plaintiff would have been able to work had he been compliant with his medications. Frey v. Bowen, 816 F.2d 508, (10th Cir. 1987). However, plaintiff misplaces reliance on Frey. Frey addressed the denial of disability benefits based on a failure to take medications. Frey, 816 F.2d at 517. Here, that is not the scenario. The ALJ used non-compliance with prescriptions in weighing plaintiff's credibility regarding the persistence and limiting effects of the alleged symptoms, not as a basis of denial of disability benefits. The ALJ noted that when plaintiff was compliant with the prescribed treatment, he was "doing well" and had "no shortness of breath with exertion." [R. 14]. It is only when the ALJ is denying disability based on **a failure** to take prescribed medications that he must complete a four-part test. Qualls, 206 F.3d at 1372. The ALJ did not err in this regard.

## Conclusion

Based on the foregoing, the Commissioner is supported by substantial evidence and the correct legal standards were applied. The decision is **AFFIRMED**.

Dated this 29th day of March, 2012.

_____
T. Lane Wilson
United States Magistrate Judge

13